AETNA BRIDGE COMPANY

v.

STATE of Rhode Island DEPART-
MENT OF TRANSPORTA-
TION.

No. 99–391–Appeal.

Supreme Court of Rhode Island.

April 19, 2002.

William Mark Russo/William A. Poore, Providence, for Plaintiff.

John B. Affleck/Harris Weiner, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

In this appeal, the State Department of Transportation seeks review of a Superior Court final judgment confirming an arbitrator's award in favor of Aetna Bridge Company, and appeals from the denial of its motion to vacate that award. Because the record is incomplete, we are unable to decide the issues presented on appeal.[1] Consequently, we remand the matter to the Superior Court for further proceedings consistent with this opinion.

## I

### Case Travel/Facts

In early 1994, the State Department of Transportation (DOT) advertised for bids to reconstruct and retrofit Pawtucket Bridge No. 550, a part of Interstate Route 95 in the City of Pawtucket. The design and plans for the bridge reconstruction and retrofit had been prepared for DOT by A.G. Lichtenstein & Associates (Lichtenstein). Aetna Bridge Company (Aetna) was the successful bidder. It contracted with DOT to do the bridge reconstruction work, the bulk of which concerned the installation of a "catwalk access inspection system."

Aetna, as the general contractor, subcontracted with several companies to fabricate and furnish the structural steel needed for the bridge catwalks and furnished DOT with a list of the subcontractors that it had engaged. That list included Northeast Steel, Jac–Lyn Steel, Inc., and Griffen Iron Works. Aetna neglected, however, to inform DOT that it also had subcontracted with L.B. Foster (Foster), a material supplier, to fabricate the structural steel for the catwalks. Foster, as it turns out, had agreed with Aetna to fabricate the structural steel for a "lump-sum" payment, which meant that a mutual and final cost and price for the work and materials had been agreed upon by both Aetna and Foster.

Pursuant to its "lump-sum" subcontract with Aetna, Foster was responsible for "detailing" the required structural steel and providing necessary shop drawings for the bridge catwalk. After producing only two or three shop drawings, Foster decided to hire Alpha Structures, Inc. (Alpha), a Pennsylvania structural steel engineering and detailing company, to produce the remaining drawings. DOT had no knowledge of either the Aetna–Foster or Foster-Alpha subcontracts.

Apparently, Alpha estimated that to complete the detailing of the bridge catwalk system it would be required to produce no more than thirty shop drawings, each taking twenty hours, for a total of 600 work hours. Unfortunately, however, Alpha underestimated the scope of the projected detailing work. Instead, it was required to prepare seventy shop drawings

1. The record from the arbitration proceeding was not available to either the Superior Court or to this Court; consequently, the "facts" as recited in this opinion are gleaned from the parties' briefs and from the exhibits that were attached to their case filings.

and employ an additional 1650 work hours to complete the project. Alpha blamed its underestimation of the number of required shop drawings on inadequate design specifications drawn up by Lichtenstein and sought payment from Foster for its additional expenses. Apparently, Foster refused to pay Alpha because, in March 1995, Foster sought payment for Alpha's additional expenses from Aetna. Aetna refused, contending that it was "squared away" on the bridge project and had no remaining liability to Foster because of their subcontract "lump-sum" payment agreement. Subsequently, however, and apparently as a courtesy to Foster, Aetna presented what later was said to be a "pass-through" claim on behalf of Foster to DOT.[2] DOT refused to pay, asserting that, pursuant to its general contract with Aetna, it had paid all that was owed to Aetna and that it had not been aware of, nor was it ever privy to, any business relationships that Aetna might have had with any unlisted subcontractors.

On October 22, 1996, Aetna filed a demand for arbitration with DOT pursuant to the Public Works Arbitration Act, G.L. 1956 chapter 16 of title 37. Thereafter, it successfully moved in the Superior Court for an order compelling arbitration. An arbitration hearing before a single arbitra-

tor took place on December 15, 17 and 29, 1997, and January 8, 1998. Eight months later, on October 6, 1998, the arbitrator gave a two-sentence award in favor of Aetna in the amount of $67,845.22.[3]

On October 21, 1998, Aetna moved in the Superior Court to confirm the arbitrator's award. DOT objected to its confirmation and moved to vacate the award. In objecting to confirmation of the award, as well as in support of its motion to vacate, DOT asserted that it was not until the final day of the arbitration hearing that it learned for the first time that Aetna's claim was a "pass-through" claim on behalf of Foster; that Aetna itself had been unaware of Foster's subcontract with Alpha; and that Aetna had no remaining liabilities stemming from its general contract with DOT to either Foster or Alpha.[4] Thus, DOT contended that Aetna's "pass-through" claim was not arbitrable in the first instance; that the arbitrator's award should not be confirmed; and that its motion to vacate the award should be granted.

Aetna countered that DOT's motion to vacate did not meet any of the specific and limited grounds required to vacate an award as set out in § 37–16–18;[5] that Aetna was permitted to proceed with a "pass-through" claim on behalf of one of its subcontractors because it validly had liqui-

**2.** The "pass-through" claim doctrine emanated from the holding in *Severin v. United States,* 99 Ct.Cl. 435 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). In that case, the United States Court of Claims held that a general contractor cannot sue an owner on behalf of one of its subcontractors to recover monies due the subcontractor unless the general contractor is itself liable to the subcontractor. Previously, we have recognized without expressly adopting, the existence and nature of the *Severin* or "pass-through" claim doctrine in *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440 (R.I.1994).

**3.** The award by the arbitrator simply stated: "Petitioner Aetna Bridge Holding Company is

hereby awarded the total sum of Sixty Seven Thousand Eight Hundred Forty Five Dollars and 22/100 ($67,845.22). Interest is not awarded."

**4.** It appears that this evidence was elicited by way of testimony. DOT insists that to this day, it never has seen the Aetna–Foster subcontract or the Foster–Alpha subcontract.

**5.** General Laws 1956 § 37–16–18 provides: "In any of the following cases, the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated.
(1) When the award was procured by fraud.
(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly ex-

dated its liability to Foster in exchange for committing its resources toward pursuing the underlying claim;[6] and, because DOT had participated in the arbitration proceeding, DOT now was estopped from claiming that Aetna's "pass-through" claim was not arbitrable.

In his decision, the hearing justice appears to have acknowledged that Aetna's claim indeed was a "pass-through" claim on behalf of Foster. However, he questioned whether it was possible for him to make a final determination concerning the arbitrability of Aetna's "pass-through" claim because he did not have available to him the entire record of the arbitration proceedings and because the arbitrator had made no findings about whether Aetna's claim was, in fact, a "pass-through" claim. Therefore, the trial justice determined that he was "constrained to and must * * * affirm the award." As a result, he confirmed the arbitrator's award and denied DOT's motion to vacate. An order and final judgment to that effect was entered on May 11, 1999, and DOT timely filed its notice of appeal.

## II

### The Appellate Contentions

In its appeal, DOT contends that Aetna's contractual obligations to DOT concerning the bridge project had been performed fully and compensated for in accordance with its general contract with DOT, and that Aetna lacked standing to bring a "pass-through" claim against DOT for one of the project's subcontractors to whom Aetna had no liability and with whom DOT had no privity. DOT additionally contends that its questioning of the arbitrability of Aetna's "pass-through" claim essentially presented a challenge to the subject-matter jurisdiction of the arbitrator that should have been considered *de novo* by the Superior Court hearing justice at the hearing on DOT's motion to vacate the arbitrator's award, but was not so considered.

Aetna, on the other hand, contends that because DOT failed to challenge the arbitrability of Aetna's claim at the outset of the arbitration proceeding and, instead, participated in the proceeding, it was estopped from doing so at the Superior Court hearing to confirm the arbitrator's award, pursuant to § 37–16–13.[7] It additionally contends that because it was liable to Foster through the liquidation agreement, its claim was not precluded by the "pass-through" doctrine;[8] instead, it asserts, the claim was arbitrable and that DOT has failed to enunciate any of the

ecuted them, that a mutual, final, and definite award upon the subject matter submitted was not made.

(3) If there was no valid contract, and the objection has been raised under the conditions set forth in § 37–16–13."

**6.** Like the alleged subcontracts, the alleged liquidation agreement never was made part of the Superior Court record, and at oral argument before us, Aetna's counsel was unable to recall its contents.

**7.** Section 37–16–13(1) provides in pertinent part:

"(1) A party who has participated in any of the proceedings before the arbitrator or arbitrators may object to the confirmation of the award only on one or more of the grounds hereinafter specified (provided that he or she did not continue with the arbitration with notice of the facts or defects upon which his or her objection is based) because of a failure to comply with § 37–16–8 or with § 37–16–10 or because of the improper manner of the selection of the arbitrators."

**8.** As noted earlier, the purported liquidation agreement never was presented to the Superior Court, nor to this Court on appeal.

grounds permitting the vacating of the award as provided by § 37–16–18.

## III

### Analysis

In its demand for arbitration, Aetna had identified the following issues to be arbitrated:

"1. Whether Aetna is entitled to an equitable adjustment in the Contract amount to compensate Aetna for those extra costs incurred as a result of alleged errors and omissions in the design drawings from the structural steel for catwalks;

"2. Whether said alleged errors and omissions equate to a constructive change entitling Aetna to attorneys' and consultants' fees; and

"3. Whether Aetna is entitled to interest on its claims."

■ Because "[t]here is no provision in the Public Works Arbitration Act for the taking of depositions" and discovery, DOT "had no statutory means for obtaining discovery." *Lutz Engineering Co. v. Sterling Engineering & Construction Co.*, 112 R.I. 605, 608, 314 A.2d 8, 9 (1974).[9] Therefore, it was unable through ordinary discovery procedures to ascertain the true nature of

Aetna's arbitration claim before the arbitration hearing began.

In light of such a discovery restriction, DOT and Aetna apparently had agreed to voluntarily exchange discovery materials. However, while both DOT and Aetna did exchange some pre-hearing discovery materials, it appears that Aetna did not disclose to DOT that it had subcontracted with Foster to fabricate the structural steel for the catwalks and that Foster had agreed to receive a "lump-sum" payment from Aetna for that work. Neither did it disclose to DOT that Foster had in turn subcontracted out the "detailing" work to Alpha to produce the necessary shop drawings for the bridge catwalk system. In fact, when Foster initially subcontracted out its work to Alpha, Foster failed to inform even Aetna of that subcontract. In addition, the alleged liquidation agreement that Aetna alluded to, as well as the Foster and Alpha subcontracts, apparently never were produced, even at the arbitration hearings.

Thus, before the arbitration hearing began on December 15, 1997, DOT was hardly in a position to differentiate between the various subcontracting relationships that had been undertaken by Aetna to complete its general contractor obligations to DOT under the bridge restoration work project.[10] Indeed, based upon Aetna's own

---

**9.** In *Lutz,* we declared that a party to an arbitration proceeding could "not invoke the discovery provisions of [Rules 26–37 of the Superior Court Rules of Civil Procedure] in aid of arbitration[,] [because] [t]he Rules of Civil Procedure govern only civil actions." *Lutz Engineering Co. v. Sterling Engineering & Construction Co.,* 112 R.I. 605, 608 n. 3, 314 A.2d 8, 10 n. 3 (1974). *See also* Rule 1 of the Superior Court Rules of Civil Procedure; *Ruff v. Metropolitan Property and Liability Insurance Co.,* 508 A.2d 672, 673 (R.I.1986) ("an arbitration proceeding is not an action at law[;] * * * consequently[,] the parties in such proceedings may not invoke the discov-

ery provisions of the Superior Court Rules of Civil Procedure").

**10.** In its appellate brief, DOT notes:
"Prior to the commencement of the arbitration on December 15, 1997 RIDOT submitted an Arbitration Statement based upon the limited facts known at that time. Throughout the discovery process RIDOT raised numerous questions about the various business relationships established by Aetna to accomplish the work under the Contract. The RIDOT's initial focus was on Northeast Steel of North Kingstown, Rhode Island (Northeast) and the other subcontractors on the approved subcontractor list. However, even after the comple-

demand for arbitration, it appeared to DOT that Aetna merely was seeking for itself an "equitable adjustment in the [general contract] amount to compensate Aetna" for extra costs that it had incurred as a result of the alleged errors in the Lichtenstein design drawings for the structural steel needed for the bridge catwalks.

DOT contends that it became apparent only on the final day of the arbitration proceeding that Aetna was not seeking any amounts from DOT to "compensate Aetna" but, instead, Aetna's arbitration claim was, in reality, a "pass-through" claim whereby Aetna was seeking to obtain additional compensation for either Foster or Alpha to help resolve the dispute that existed between those two subcontractors. On that day, DOT asserts, it learned from the testimony of John McCann (McCann), Aetna's vice president, that Aetna's claim was a "pass-through" claim on behalf of Foster. He testified that all pricing for the materials subcontracted for in Aetna's purchase order to Foster was pursuant to a "lump-sum" contract. He said that Aetna had paid Foster the agreed upon "lump-sum" amount and had no outstanding liabilities with Foster, and that he had no knowledge of Foster's business relationship with Alpha. McCann apparently testified without equivocation that Aetna had no pending liabilities or debts associated with its general bridge project contract with DOT. When DOT discovered that Aetna apparently no longer was liable to Foster, it raised its *Severin* doctrine challenge to the substantive arbitrability of Aetna's "pass-through" claim. *See Severin v. United States,* 99 Ct.Cl. 435 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944).

Aetna disputes DOT's "pass-through" claim contention and asserts that its liquidation agreement with Foster constitutes a liability to Foster. However, that purported liquidation agreement apparently never was produced by Aetna at the arbitration hearing, nor was it presented to the hearing justice in the Superior Court proceedings. Aetna additionally avers that because DOT continued to participate in the arbitration proceeding after raising its substantive *Severin* "pass-through" arbitrability challenge, DOT thereby waived its challenge and thereafter was estopped from raising it anew at the Superior Court hearing on its motion to vacate the arbitrator's award. We disagree.

■■■ "It is well settled in this jurisdiction that if a party objects to substantive arbitrability at the arbitration hearing and then proceeds to arbitration, the party has preserved the [substantive arbitrability] issue for later determination by a reviewing court." *State v. Local 2883, American Federation of State, County and Municipal Employees,* 463 A.2d 186, 189 (R.I. 1983). *See also State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94,* 692 A.2d 318, 323 (R.I.1997). Indeed, DOT was not required to object to substantive arbitrability at the arbitration hearing to preserve the issue for appeal. "This is so because we deem 'the question of substantive arbitrability, the right to have the grievance heard in arbitration at all, [to be] the equivalent of subject matter jurisdiction in the courts.'" *State Department of Mental Health Retardation and Hospitals,* 692 A.2d at 323 (quoting Nathan & Green, *Challenges to Arbitrability, in 1 Labor and Employment Arbitration* § 13.01[4],

---

tion of discovery it was still not clear who the subcontractors were on the job or how L.B. Foster was involved. The RIDOT participated in the arbitration while reserving its rights

to clarify the various business relationships under the Contract and the potential impact on arbitrability (*see* RIDOT's Arbitration Statement, December 15, 1997 * * *)."

at 13–12 (Bornstein & Gosline ed.1996)). Consequently, substantive arbitrability, like subject matter jurisdiction, can be raised at any time. *See Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1235 (R.I.1998).

■ We discern from the sparse record before us that the initial problem encountered by the Superior Court hearing justice in this case was the absence of any stenographic record of the arbitration hearing and of the evidence that was presented at that hearing. Enhancing that problem was the arbitrator's bare-boned two-sentence award, wherein he simply hurdled over four days of hearing testimony and DOT's challenge to Aetna's standing to arbitrate its "pass-through" claim by tersely stating: "Petitioner Aetna Bridge Holding Company is hereby awarded the total sum of Sixty Seven Thousand Eight Hundred Forty Five Dollars and 22/100 ($67,845.22). Interest is not awarded." [11] The hearing justice acknowledged that difficulty when noting:

> "The Court's analysis of this matter which it believes must rise or fall dependent on the issue of whether the arbitrator so imperfectly exceeded his power

by reason of a manifest error of law because of his total disregard of law called to his attention, or total misunderstanding of such law is made well-nigh impossible because as noted in Footnote 1 on Page 7 of respondent's memo herein it is impossible from reading the arbitrator's award, and it is impossible from the record that has been made available for this Court to determine what issues were considered by the arbitrator and/or on what basis he rendered his award."

■ It further appears from the transcript of the hearing justice's decision that he erroneously equated the issue of the substantive arbitrability of Aetna's admitted "pass-through" claim with the usual deference accorded an arbitrator's award.[12] This Court has held that "the issue of whether a dispute is arbitrable concerns a question of law and is subject to a broader standard of review than is the arbitrator's decision on the merits." *State Department of Mental Health, Retardation and Hospitals*, 692 A.2d at 323. This Court's review of such a matter must be *de novo*. *See Providence Teacher's Union Local 958–American Federation of Teachers v. Providence School Committee*, 433 A.2d 202, 205 (R.I.1981).

---

11. We do not fault the arbitrator's two-sentence decision. Arbitrators are under no obligation to set out reasons for their award, their findings of fact or their conclusions of law on which an award is premised. *See State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94*, 692 A.2d 318, 322 n. 12 (R.I.1997). However, when, as here, no transcript of the hearings were available, findings, if made by the arbitrator, would have been of great assistance to the hearing justice, as well as to this Court.

12. The hearing justice stated:
   "This Court believes as a matter of law that the decision of our Supreme Court in *Clark–Fitzpatrick, Inc./Franki Foundation Co. versus Gill* recorded at 652 A.2d 440 at page 449, a 1994 Rhode Island decision, does not under-

cut the holding by the Court of Claims in *Severin versus the United States*, 99 Court of Claims 435, a 1943 decision in which cert was denied by the United States Supreme Court at 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 in 1944; to wit, a general contractor cannot recover from an owner unless the general contractor is liable to the subcontractor. It appears, arguendo, that element is here absent; and if that, in fact, were the case, then, in fact, the arbitrator did, if this were called to his attention, exceed his power, or he so imperfectly executed his powers by reason of a manifest disregard of the last mentioned legal principal. And under those circumstances, the motion of DOT to vacate the award would be granted."

**524**

We conclude from our *de novo* review of the substantive arbitrability issue before us, and from our review of the respective contentions of the parties to this appeal, that if Aetna's claim against DOT indeed was a "pass-through" claim with no concomitant liability to Aetna, then it would not be arbitrable pursuant to the doctrine enunciated in *Severin,* a doctrine to which we now formally subscribe.[13]

Consequently, we remand this case to the Superior Court to determine the substantive arbitrability of Aetna's claim. If that claim is determined to be a "pass-through" claim, that court will deny Aetna's motion to confirm the arbitrator's award and will grant DOT's motion to vacate the award. If, on the other hand, the court determines that Aetna's claim is not a "pass-through" claim, it will grant the motion to confirm the arbitrator's award and will deny DOT's motion to vacate the award. In presenting evidence to the Superior Court on the substantive arbitrability of Aetna's claim, the parties and the court shall not be restricted to the record before the arbitrator and evidence that was presented to him.

The State of Rhode Island Department of Transportation's appeal is sustained. The final judgment of the Superior Court as entered is vacated. The papers of this case are remanded to the Superior Court with direction to conduct a new evidentiary hearing on Aetna's motion to confirm and on DOT's motion to vacate in accordance with this opinion and to enter judgment accordingly.

---

13. We note also, that "it is insufficient proof for a prime contractor who is suing an owner to prove that his [or her] subcontractor has sustained injury or damage through fault of the owner unless the prime contractor goes further and shows that he [or she] somehow is responsible to the subcontractor for those damages." *Department of Transportation v. Claussen Paving Co.,* 246 Ga. 807, 273 S.E.2d 161, 164 (1980).