[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion for summary judgment or, in the alternative, partial summary judgment brought by Insurance Reconstruction Services, Inc. (Plaintiff) against A.F. Lusi Construction, Inc. and Hartford Accident and Indemnity Company (Defendants).
 FACTS/TRAVEL
In November of 2000, A.F. Lusi Construction, Inc. (Construction) contracted with the City of Newport School Committee (School Committee) to perform renovations and construction at the Thompson Middle School (School) in Newport, Rhode Island As general contractor, Construction hired Fire Suppression Systems of New England, Inc. (Fire Suppression) to install a sprinkler system.
Early on August 17, 2002, a recently installed sprinkler malfunctioned, discharging several thousand gallons of water onto newly renovated areas of the School, which was scheduled to open in early September. After receiving notification of the calamity, Armand T. Lusi (Lusi), president of Construction, telephoned Plaintiff, a fire and emergency restoration contractor. Plaintiff's project manager, Dennis Walsh (Walsh), responded to Lusi's call and contacted one of Plaintiff's subcontractors, Providence Fire Restoration (PFR) to perform emergency drying and water extraction services.
At 9:15 a.m., Walsh arrived at the School and observed extensive damage to Construction's work, including standing water on three levels of the building and water draining from the ceiling, the walls, and down stairways. Walsh met with Lusi (Walsh Aff. ¶ 6) and presented him with Plaintiff's standard form contract (Contract). Walsh informed Lusi that he needed Lusi's signature on the Contract to initiate work. (Lusi Aff. ¶ 10.) Lusi, however, stated that he could not properly complete the Contract without information about the School Committee's insurance carrier. (Lusi Aff. ¶ 12.) Walsh replied that it was imperative that they allow Plaintiff's workers access to the building to commence repairs and that they could address the insurance issue later. (Id.) Lusi signed the Contract, which, as completed, states:
 "Name Lusi Construction
 Access, Authorization and Direct Payment Request Contract
 I (we) authorize INSURANCE RECONSTRUCTION SERVICES, INC. to perform water extraction and drying on property located at 39 Broadway [in] Newport.
 As owner(s) of this property, I (we) understand that I (we) must authorize this work. I (we) hereby authorize INSURANCE RECONSTRUCTION SERVICES, INC.
to perform this work and accept responsibility for payment upon completion. I (we) authorize and direct my (our) Insurance Company __________ to make payment directly to INSURANCE RECONSTRUCTION SERVICES, INC.
or to include their name to the payment check for doing this work and to that extent, I (we) assign the benefits applicable to this loss to INSURANCE RECONSTRUCTION SERVICES, INC.
 The extent of the repairs will consist of only that which is specified to by the Insurance Company. Any Additional work or charges must be in writing and agreed to by Insurance Reconstruction Services, Inc.
 I (we) acknowledge receipt or a copy of hereof:"
At the end of the document, the Contract contains a signature line designated "Owner," on which Lusi signed "Armand T. Lusi" and a line for "Owner Address," which was left blank.
Based on his discussion with Walsh, Lusi allegedly believed that his signature on the Contract merely authorized Plaintiff, on behalf of the School Committee, to access the building and initiate work. (Lusi Aff. ¶ 13.) Lusi claims further that he believed that the School Committee and its insurance carrier, not Construction, would bear responsibility for paying Plaintiff. (Id.)
Plaintiff began work at once, and at 9:45 a.m., PFR arrived at the School and immediately began extraction and moving contents. Another of Plaintiff's subcontractors, Commercial Drying Technologies, Inc., also came to assist later that day.
In the days that followed, Plaintiff, its subcontractors, and its suppliers removed the building's contents; cut access holes for water extraction from confined spaces; delivered propane and diesel fuel on an emergency basis; installed electrical panels and trailer-mounted generators; assembled and used air movers and refrigerant dehumidifiers; and performed water extraction and antimicrobial treatments.
On August 21, 2002, Lusi; Jack Anderson, Plaintiff's owner; School Committee representatives; Fire Suppression representatives; and a representative of the Rhode Island Interlocal Risk Management Trust (Interlocal Trust), the School Committee's property insurance carrier, met at the School. At this meeting, the Interlocal Trust representative suggested that the School Committee's property insurance policy might not cover the loss. (Lusi Aff. ¶ 19.) Lusi responded that if this suggestion were true, he would like to cease all water remediation services. (Id.) Mr. Anderson, however, assured Lusi that with the involvement of three insurance carriers, payment for the services would be arranged. (Id.)
Plaintiff completed its work on August 28, 2002 and, thereafter, submitted an invoice to Construction for $307,935.36. Construction, in turn, submitted the invoice to the School Committee and Interlocal Trust for payment. Neither the School Committee nor Interlocal Trust, however, agreed to pay. Construction likewise declined to pay Plaintiff.
In March of 2003, Construction filed a Demand for Arbitration against the School Committee and Fire Suppression.[1] On April 15, 2003, the School Committee filed a Motion to Stay Arbitration. The Superior Court granted the motion, and the order is now on appeal. Also on April 15, the School Committee filed suit against Construction, claiming that it failed to perform adequate remediation and that, as a result, mold accumulated and the interior wallboards sustained water damage. On May 12, 2003, Construction moved to dismiss the School Committee's complaint or, in the alternative, for a stay pending arbitration. On May 19, 2003, the Superior Court denied Construction's motion.
In September of 2003, this litigation was commenced when Plaintiff filed suit against Defendants, asserting the following claims: breach of contract (Count I); quantum meruit (Count II); and a bond claim against Hartford Accident and Indemnity Company (Count III). Plaintiff seeks $307,935.36, the claimed value of the work it performed.
Defendants jointly filed an Answer to Plaintiff's Complaint on October 20, 2003. In their Answer, Defendants assert several counterclaims, including one for breach of a contract between Plaintiff and School Committee. In this counterclaim, Construction argues that a contract existed between Plaintiff and the School Committee, that Plaintiff performed its services pursuant to this contract, and that Construction constitutes a thirdparty beneficiary of the same. Construction asserts that if Plaintiff performed negligently — as the School Committee asserts in its complaint against Construction and for which it seeks damages against Construction — Plaintiff has breached its contract with the School Committee to the detriment of Construction as a third-party beneficiary. Construction seeks to recover any damages it sustains on account of Plaintiff's breach via this counterclaim.
In addition to asserting counterclaims, Construction also propounded a number of affirmative defenses in the Answer. By way of these affirmative defenses, Construction claims that its payment to Plaintiff was contingent upon its receipt of insurance proceeds or, alternatively, payment from the School Committee for the cleanup. Furthermore, Construction avers that it executed the Contract as an agent for the School Committee.
Plaintiff now moves for summary judgment or, in the alternative, partial summary judgment.
 STANDARD OF REVIEW
In a summary judgment proceeding, the moving party must demonstrate that he or she is entitled to judgment as a matter of law and that no genuine issues of material fact exist.Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992); Super. R. Civ. P. Rule 56. During such a proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion."Palmisciano, 603 A.2d at 320. Moreover, "the trial justice must look for factual issues, not determine them" as the judge's sole function is to determine whether any issues involving material fact exist. Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981).
"When an examination of pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in a light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." IndustrialNat'l Bank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (R.I. 1979). In opposing the summary judgment motion, the nonmoving party will not be allowed to rely upon mere allegations or denials in his or her pleadings. Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998); Super. R. Civ. P. 56(e). Instead, by affidavits or otherwise, the nonmoving party possesses an affirmative duty to set forth specific facts demonstrating the existence of a genuine issue of material fact. Id. It is not, however, an absolute requirement that the nonmoving party file an affidavit in opposition to the motion. Steinberg, 427 A.2d at 340. Rather, if the moving party's affidavit does not establish the absence of a material factual issue, the trial justice should deny the motion despite the nonmoving party's failure to file a counter-affidavit. Id.
Furthermore, Superior Court Rule of Civil Procedure 56(d) states:
 "If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion . . . shall if practicable ascertain what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy. . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."
This rule "governs whenever it appears that the entire case cannot be disposed of on a motion for summary judgment and that a trial will be necessary." Norberg v. Warwick Liquors, Inc.,107 R.I. 129, 134, 265 A.2d 648, 651 (R.I. 1970). Where such circumstances exist, "the trial court should, if practicable, ascertain what material facts are actually and in good faith controverted, and . . . should thereupon make an order establishing certain facts and leaving others for determination at the trial." Id.
 PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
I. Contract Ambiguity
Plaintiff moves this Court to grant its motion for summary judgment, asserting that the Contract clearly and unambiguously states that Construction bears responsibility for paying Plaintiff. In so arguing, Plaintiff relies upon the portion of the Contract that states, "I (we) hereby authorize INSURANCE RECONSTRUCTION SERVICES, INC. to perform this work and acceptresponsibility for payment upon completion." Pl.'s Reply Mem.
at 2.
Defendants, on the other hand, urge this Court to deny Plaintiff's motion, arguing that the Contract is ambiguous and that genuine issues of material fact exist as to which entity is responsible for Plaintiff's services and what conditions precedent, if any, must be realized before Construction assumes any payment obligation.
"If a contract is clear and unambiguous, the meaning of its terms presents a question of law for the court." Rotelli v.Catanzaro, 686 A.2d 91, 94 (R.I. 1996). Accordingly, a court may resolve the construction of a clear and unambiguous contract on summary judgment. Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980). In contrast, the construction of ambiguous contract terms constitutes a question of fact, Rotelli, 686 A.2d at 95, and a court may not resolve an ambiguous contract by summary judgment.Lennon, 423 A.2d at 822.
"Whether the terms of a contract are clear and unambiguous is itself a question of law." Rotelli, 686 A.2d at 94. In answering this question, "the court may consider all the evidence properly before it." Id. Furthermore, the court must view the document in its entirety and attribute to the document's language "its plain, ordinary and usual meaning." Id. "[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Id.
A review of the evidence properly before this Court reveals that the Contract is ambiguous. Viewing the Contract in its entirety, and attributing to the Contract's language its plain, ordinary and usual meaning, this Court finds that the Contract leaves unclear who bears responsibility for paying Plaintiff. In stating "[a]s owner(s) of this property, I (we) understand . . .," the Contract suggests that the terms "I" or "we" refer to the owner's of the property, or, in this case, the City of Newport. However, "Lusi Construction" appears in the blank designated "Name," suggesting that "I" or "we" refers to Construction. Given the different possibilities for the definition of the terms "I" or "we," the sentence "I (we) hereby authorize INSURANCE RECONSTRUCTION SERVICES, INC. to perform this work and accept responsibility for payment upon completion," is susceptible to more than one interpretation and, therefore, ambiguous. The parties' failure to fill in the "Owner Address" and the "Insurance Company" further perpetuate this ambiguity. Accordingly, a question of fact exists, and the Court must deny Plaintiff's motion for summary judgment.
Additionally, this Court is mindful that Plaintiff lacked any legal basis upon which to conclude that Construction possessed the right to sign on behalf of the School Committee. Likewise, Plaintiff possessed no legal basis, derived from the face of the Contract, from which to believe that Construction owned the property.
II. Severin Doctrine
Plaintiff further asserts that pursuant to the Severin Doctrine, Construction has accepted liability and "is required to admit responsibility" to Plaintiff as a matter of law because Construction commenced litigation against the School Committee to recover the full amount of Plaintiff's invoice in its Demand for Arbitration. Pl.'s Reply Mem. at 2-4. Defendants, however, argue that the Severin Doctrine constitutes an affirmative defense and that Construction's initiation of litigation against the School Committee does not constitute an admission of liability.
The pass-through doctrine "permits a general contractor who is liable to a subcontractor to bring an action against the owner to recover on behalf of the subcontractor." Bd. of Governors forHigher Educ. v. Infinity Constr. Servs., Inc., 795 A.2d 1127, 1128-29 (R.I. 2002). The Severin Doctrine,[2] however, limits the passthrough doctrine, providing that a general contractor cannot recover from an owner for damages incurred by a subcontractor unless the general contractor is itself liable to the subcontractor for those amounts. Id. at 1129;Clark-Fitzpatrick, Inc./Franki Found. Co. v. Gill,652 A.2d 440, 449 (R.I. 1994). Courts narrowly construe the application of the Severin Doctrine. E.R. Mitchell Constr. Co. v. Danzig,175 F.3d 1369, 1371 (Fed. Cir. 1999).
The Rhode Island Supreme Court adopted the Severin Doctrine inAetna Bridge Co. v. R.I. Dep't of Transp., 795 A.2d 517, 524 (R.I. 2002). In Aetna Bridge Co., the Department of Transportation (DOT) entered into a contract with Aetna Bridge Company (Aetna) wherein Aetna agreed to perform bridge reconstruction work. Id. at 518. Aetna, in turn, subcontracted with L.B. Foster (Foster), and Foster subcontracted with Alpha Structures, Inc. (Alpha). Id. Alpha expended additional monies, and sought to recover them from Foster. Id. at 519. Foster then sought to recover these monies from Aetna. Id. Aetna refused to pay Foster, but asserted a claim against DOT on Foster's behalf, via a demand for arbitration. Id. The court held that "if Aetna's claim against DOT indeed was a `pass-through' claim with no concomitant liability to Aetna, then it would not be arbitrable pursuant to the doctrine enunciated in Severin."Id. at 524. The court also mentioned, in a footnote, that "`it is insufficient proof for a prime contractor who is suing an owner to prove that his [or her] subcontractor has sustained injury or damage through fault of the owner unless the prime contractor goes further and shows that he [or she] somehow is responsible to the subcontractor for those damages.'" Id. at 524, n. 13 (citing Dep't of Transp. v. Claussen Paving Co.,246 Ga. 807, 810-11, 273 S.E.2d 161, 164 (1980)).
Plaintiff has not provided, nor could this Court locate, any case law in which a subcontractor asserted the Severin Doctrine against a contractor in a suit by the subcontractor against the general contractor. Rather, courts apply the Severin Doctrine in suits by the general contractor against the government, or the owner, where the government asserts the Severin challenge against the general contractor. See, e.g., Perry-McCall Constr.,Inc. v. United States, 46 Fed. Cl. 664, 668 (2000) (in a suit by a general contractor against the United States Department of the Navy, the latter asserted a Severin challenge against the general contractor); George Hyman Constr. Co. v. United States,
30 Fed. Cl. 170, 171 (1993) (in a suit by a general contractor against the United States, the United States asserted a Severin
challenge against the general contractor); Aetna Bridge Co.,
795 A.2d at 519 (in suit by a general contractor against the Rhode Island Department of Transportation, the latter asserted aSeverin challenge against the general contractor).
Furthermore, case law suggests that the Severin Doctrine was devised to protect the government. See, e.g., George HymanConstr. Co., 30 Fed. Cl. at 178 (stating the Severin Doctrine aims "to prevent assignment of claims against the government, to prohibit imposition of liability against the government without its consent, and to prevent actions against the government by those lacking privity of contract with the government").
In light of the case precedent and the Severin Doctrine's underlying purpose, this Court finds Plaintiff subcontractor's attempted utilization of the Severin Doctrine against Construction, the general contractor, in a suit by the subcontractor against the general contractor, misplaced. Accordingly, this Court denies Plaintiff relief pursuant to the Severin Doctrine.
III. Fairness and Reasonableness of Plaintiff's Charges
Construction further argues that this Court should deny Plaintiff's motion on the grounds that genuine issues of material fact exist concerning the fairness and reasonableness of Plaintiff's claimed damages. More specifically, Construction, relying on Lusi's affidavit, asserts that Plaintiff's bill is two to three times higher than what is fair and reasonable for the services rendered; that Plaintiff's ten percent overhead and ten percent profit charges are not fair and reasonable; that even a combined ten percent rate for overhead and profit is considered high in the industry; and that the equipment rental charges incurred by Plaintiff are excessive.
Plaintiff argues, to the contrary, that Construction has failed to demonstrate a genuine issue of material fact as to whether Plaintiff's charges are fair and reasonable. In particular, Plaintiff claims that it billed Construction the same overhead and profit rate on the last project it performed for Plaintiff; that Plaintiff has failed to introduce any specific evidence demonstrating why Plaintiff's overhead and profit rates are unreasonable or what rates would be reasonable; that Construction relies on conclusory and self-serving assertions by Lusi; and that Construction did not prove with competent evidence the existence of a factual dispute.
In the absence of a finding of liability, this Court finds it inappropriate to determine the magnitude of damages at this juncture. The question of damages, rather, should be left for trial. Accordingly, this Court here declines to make any determinations based on Construction and Plaintiff's arguments concerning the fairness and reasonableness of Plaintiff's charges.
 PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
In the absence of a grant of its motion for summary judgment, Plaintiff moves alternatively for partial summary judgment. Plaintiff argues that this Court may enter partial summary judgment in its favor as to $256,788.31, a figure reflecting the total amount Plaintiff claims is due, $307,935.36, minus the amount Construction seeks in its breach of contract counterclaim against Plaintiff, $51,147.00.
Construction, on the other hand, avers that partial summary judgment is improper because Construction's breach of contract counterclaim against Plaintiff constitutes a reaction to the School Committee's claim against Construction. The amount of damages sought in Construction's counterclaim, therefore, is contingent upon the amount of damages demanded by the School Committee in its Complaint against Construction, and this amount could change. Furthermore, Construction claims that partial summary judgment is improper because it unfairly limits Construction's ability to recover damages against Plaintiff. If the Court grants Plaintiff's request for partial summary judgment, Construction claims, Construction may be forced to pay Plaintiff more than that to which Plaintiff is entitled, and Construction would then have to pursue Plaintiff for the overpayment.
Having found that a genuine issue of material fact exists, see supra "I. Contract Ambiguity," this Court denies Plaintiff's motion for partial summary judgment.
 CONCLUSION
This Court denies Plaintiff's motion for summary judgment, finding that the Contract is ambiguous and that a genuine issue of material fact exists. Furthermore, this Court finds that Plaintiff is not entitled to judgment as a matter of law pursuant to the Severin Doctrine. Finally, this Court denies Plaintiff's alternative motion for partial summary judgment. Defendants' counsel shall submit an appropriate order for entry.
[1] In its Demand for Arbitration, Construction asked for monetary relief in the amount of $473,535.73, which includes "the costs incurred by or on behalf of . . . [Construction] to mitigate property damage, and to repair and or replace damaged property" in connection with the August 17, 2002 sprinkler malfunction at the School. Demand for Arbitration at 1. In other words, the $473,535.73 in damages claimed include the $307,935.36 that Plaintiff claims Construction owes. In addition, Construction sought "an arbitration award/declaratory judgment that the School Committee has breached its contract with . . . [Construction] by failing to reimburse . . . [Construction] for the repair costs . . . insofar as . . . [Construction] incurred these repair costs under emergency conditions affecting safety of persons or property, and in an attempt to prevent threatened damage, injury or loss." Id. at 2.
[2] The Severin Doctrine originated in Severin v. UnitedStates, 99 Ct. Cl. 435 (1943), cert. denied, 322 U.S. 733,64 S.Ct. 1045, 88 L.Ed. 1567 (1944).