DECISION
The plaintiff, Rhode Island Council 94, AFSCME is a labor organization that represents certain state employees for purposes of collective bargaining. The complaint in this action was filed under the Uniform Declaratory Judgment Act, G.L. 1956 § 9-30-1, seeking a declaration that the State's demand for arbitration under G.L. 1956 § 36-11-1 et seq is not a lawful demand and accordingly that the arbitration scheduled to proceed on November 12, 2007 should not proceed.
Because of the imminent scheduling of the arbitration as demanded by the State, the Court, with the consent of the parties, accelerated its consideration of this matter in accordance with the provisions of Rule 57 of the Rules of Civil Procedure.
 Facts
The facts material to this declaratory action are not substantially in dispute. They are as follows:
1. The State and Council 94, on or about November 18, 2005, entered into a Collective Bargaining Agreement, (hereinafter "CBA") effective for the period July 1, 2004 to June 30, 2008.
2. Prior to the execution of the CBA, the parties were negotiating the provisions of an agreement to that which expired on June 30, 2004. When the parties were unable to *Page 2 
reach agreement, the State filed a request for conciliation in March 2005, pursuant to the provisions of § 36-11-1, et seq.
3. The State Labor Relations Board appointed a conciliator with whom the parties met in April and May 2005. The issues submitted for consideration included those relating to the design and structure of the State employees' health insurance plan.
4. In May 2005, the conciliator issued a report, which report made certain recommendations to the parties with respect to health insurance plan design changes. Specifically, the conciliator recommended that the parties give serious consideration, perhaps in the last two years of the contract, to changes that would provide additional savings in the overall cost of premiums for both parties, while allocating slightly more cost to direct users of the system. Both the State and the Union had made proposals to the conciliator relative to the co-pay provisions to be part of the health care design plan.
5. The conciliator did not recommend either the State's or the Union's proposals for co-pays, but only recommended that the parties "give serious consideration" to modest plan design changes.
6. The parties considered the recommendations of the conciliator and entered into a Memorandum of Understanding dated June 16, 2005. The new CBA was entered on November 18, 2005. Prior to entering into the contract, there were no unresolved issues referred to arbitration under the provisions of § 36-11-9.
7. As part of the CBA, the parties agreed to the following provision contained in Article 14.2:
 [t]he parties shall consider modest health care plan design changes, to be effective July 1, 2006, that will provide additional savings in the overall cost of the premium which would allocate slightly more costs to the direct users, which *Page 3 
at a minimum shall implement increases in Emergency Room co-pays from $25.00 to $30.00 and Urgicare co-pays from $10.00 to $15.00.
8. On August 8, 2007. nearly two years after the current CBA was entered, the State, through its Director of Administration, made a demand for arbitration in accordance with the interest arbitration provisions of § 36-11-9. The Director's demand reads in pertinent part as follows:
 [i]n accordance with Article 14 of the Collective Bargaining Agreement, the State and your Union have considered health care plan design changes, but have been unable to reach an agreement on such changes. Accordingly, in accordance with RIGL § 36-11-9, the State intends to submit this dispute to arbitration.
In the demand, the State proposed increases in emergency room co-pay from $25 to $150; urgent care co-pay from $10 to $75; specialist co-pay from $10 to $25; and changes to the prescription co-pay.
 Analysis
The issue that this Court is being asked to determine is whether the provisions of § 36-11-9 are applicable, and therefore whether the State is within its rights to demand what the parties characterize as "interest arbitration" to compel the arbitrator to consider changes to the provisions of Article 14.2 of the CBA to be effective as of July 1, 2006.[1]
Resolution of this issue requires this Court to examine the provisions of Title 36, Chapter 11, to determine whether any of the provisions of that chapter require that the *Page 4 
parties to an existing contract arbitrate the issue of co-pays effective as of July 1, 2006. It is the State's position that because the parties included the language of Article 14.2 in the CBA and failed to reach an agreement as to the so-called "modest health care plan design changes", that this issue must be subject to binding arbitration in accordance with § 36-11-9. The Union on the other hand, believes that interpretation of the statute is misplaced, The Court agrees with the Union's position on this issue.
Section 36-11-9 of the General Laws does not stand in isolation, but rather governs a continuing process of collective bargaining identified in the context of the provisions of Title 36, Chapter 11, sections 7 through 11. In 1972, the general laws were amended by Public Laws 1972, Chapter 277 to add to Title 36, Chapter 7 the provisions contained in §§ 36-11-7 through 36-11-11. Those provisions clearly and unequivocally deal with collective bargaining, conciliation and fact finding, and arbitration associated with the formation of a collective bargaining agreement. Once the parties enter into a collective bargaining agreement, the statutory process of collective bargaining, including arbitration designed to address a bargaining impasse, comes to an end.
Section 36-11-9 does not contemplate a statutorily compelled use of binding arbitration to resolve disputes about the content of an existing collective bargaining agreement, the content of which was not made the subject of a pre-contract arbitration. Focusing on the particulars of Article 14.2, once the conciliator was unable to resolve issues concerning health plan design, including the raising of participant co-pays for certain services, the State at that time could have chosen to compel arbitration under § 36-11-9. If that course were chosen, the arbitrator would have made a binding determination of those issues utilizing the factors set forth in § 36-11-10. But the parties *Page 5 
chose instead to enter into a CBA. Therefore, absent agreement by the parties, the open issue of health plan design was effectively tabled until the next round of collective bargaining, which in this case will be invoked relative to a new contract which will be necessary following the expiration of the current CBA on June 30, 2008.
Notwithstanding the fact that § 36-11-9 was not properly invoked to compel statutory arbitration, it is still conceivable that the parties agreed, as part of the CBA, to use the arbitration procedure of §36-11-9 to re-open certain issues during the pendency of an existing contract. The State believes that the parties reached such an agreement when Article 14.2 was made part of the CBA. The Union believes the plain language of Article 14.2 evidences that no such agreement was reached.
A provision in a written contract between an employer and a union calling for arbitration of any controversy is valid and enforceable under the laws of this State. See G.L. § 28-9-1. However, provisions calling for arbitration should be clearly expressed and evidence an unequivocal agreement to arbitrate. See Stanley Bostitch, Inc. v.Regenerative Environmental Equipment Co., 697 A.2d 323,326 (R.I. 1997). Although the Stanley Bostitch case was decided under the general arbitration act, as opposed to the labor arbitration act, the United States Supreme Court has held that even as to labor matters "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit."United Steelworkers of American v. Warrior Gulf Navigation Co.,363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L.Ed. 2d 1409, 1417 (1960).
It is clear to this Court that the parties did not agree in Article 14.2 of the CBA to submit the issue of mid-contract changes to health care plan design to interest arbitration *Page 6 
in accordance with G.L. § 36-11-9. In fact, Article 14.2 makes no mention whatsoever to submitting a mid-contract impasse as to increases in health care co-payments to arbitration under § 36-11-9, as the State has demanded. Article 14.2, rather, merely requires consideration of such changes. The parties did not agree that if there was impasse on that issue the dispute would be resolved by binding arbitration under § 36-11-9.
In contrast, elsewhere in the CBA, particularly Article 5.2, the parties agreed that it may become necessary to change scheduled work hours during the period covered by the CBA. In that instance, the parties were clear that mid-contract schedule changes would be submitted to arbitration in the event the parties were unable to agree mutually to such changes. No such agreement to arbitrate is explicit in Article 14.2, and this Court should not infer such an agreement in the absence of specific contract language.
 Conclusion
Accordingly, this Court finds and declares that neither the statute nor an agreement between the parties support the State's demand for arbitration as set forth in the August 8, 2007 letter signed by Beverly Najarian in her capacity as Director of Administration. It is clear from the context of this case and from reports in the media that the Governor considers concessions in health care plan design, including increasing employee co-pays for specific services, to be pivotal to his efforts to address the growing fiscal crisis in Rhode Island Under the circumstances, however, that issue cannot be brought to binding "interest arbitration" unless and until the provisions of G.L. § 36-11-9
are invoked as part of collective bargaining associated with negotiating a new contract effective as of July 1, 2008. *Page 7 
This Court further finds and declares that the arbitrator lacks jurisdiction to hear this dispute under G.L. § 36-11-9 as a matter of substantive arbitrability. See Vose v. Rhode Island Brotherhood ofCorrectional Officers, 587 A. 2d 913, 915 (R.I. 1991); Aetna BridgeCompany v. State of Rhode Island, Department of Transportation,795 A.2d 517, 522-23 (R.I. 2002), See also Shank/Balfour Beatty v. Int'lBrotherhood of Electrical Workers, 497 F.3rd 83 (1st Cir. 2007).
The only issue ripe for adjudication under the Uniform Declaratory Judgment Act is whether the State's demand for arbitration pursuant to G. L. § 36-11-9 is a viable demand. The parties are certainly free to consider and negotiate modifications to health care plan design in accordance with the provisions of Article 14.2. Since no party made demand nor invoked the grievance arbitration provisions of Article 25 or Article 26 of the CBA, that issue is not before the Court for consideration.
It is expected that the parties will respect this declaration and that it is not necessary at this time for this Court to formally enjoin or stay the arbitration. Certainly this Court may enter such orders as may be necessary in the future in aid of this declaratory ruling Seegenerally G.L. § 9-30-8.
The parties will present a form of judgment which incorporates by reference this decision.
[1] So-called "interest arbitration" is to be distinguished from "grievance arbitration." Interest arbitration is typically employed prior to contract formation as a way of resolving open issues confronted in the collective bargaining process. Grievance arbitration, on the other hand, is typically a method of resolving issues regarding the interpretation of an existing CBA. See Elgin, J. E. R. Co. v.Burley, 325 U.S. 711, 723, 65 S. Ct. 1282, 1289-1290, 89 L. Ed. 1886,1894 (1945); American Postal Workers Union v. Runyon, 185 F. 3rd 832, 834 n. 2 (7th Cir. 1999). Seegenerally Tim Bornstein, Introduction to the System of Labor andEmployment Arbitration, in 1 Labor and Employment Arbitration § 1.02[1]-[2] (Tim Bornstein et al. eds., 2nd ed. 2007)